DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

BANK OF ST. CROIX, )
 )
        **Plaintiff,** )
   v. )
 ) Civil Action No. 2017-0052
ACACIA PROPERTIES LP, UNITED STATES )
OF AMERICA INTERNAL REVENUE )
SERVICE, ERIC B. BENSON AND BRADLEY )
P. BENSON, AS CO-TRUSTEES OF THE )
BENSON VIRGIN ISLANDS FAMILY )
HERITAGE TRUST, )
 )
        **Defendants.** )
_____)

**Attorneys:**
**Samuel T. Grey, Esq.,**
St. Croix, U.S.V.I.
    *For Plaintiff*

**Angela P. Tyson-Floyd, Esq.,**
St. Croix, U.S.V.I.
    *For Defendant United States of America Internal Revenue Service*

## MEMORANDUM OPINION

**Lewis, District Judge**

THIS MATTER comes before the Court on the "Motion for Summary Judgment and Judgment By Default" ("Motion") filed by Plaintiff Bank of St. Croix, Inc. ("the Bank") against Defendants Acacia Properties LP ("Acacia Properties"), the United States of America Internal Revenue Service ("IRS"), and Eric B. Benson and Bradley P. Benson (collectively, "the Bensons"), as Co-Trustees of the Benson Virgin Islands Family Heritage Trust ("Benson Trust" or "Trust") in this debt and foreclosure action. (Dkt. No. 50). For the reasons discussed below, the Court will grant the Bank's Motion.

## I. BACKGROUND

On August 31, 2017, the Bank filed a Complaint in the Superior Court of the Virgin Islands against Acacia Properties and the IRS for a debt owed and to foreclose a real property mortgage. (Dkt. No. 1-2). On December 6, 2017, the IRS removed the action to this Court. (Dkt. No. 1). On June 18, 2019, the Bank filed an Amended Complaint to add Eric B. Benson and Bradley P. Benson, Co-Trustees of the Benson Trust, as defendants because of a lien recorded against the mortgaged property by the Trust. (Dkt. No. 26).

In the Amended Complaint, the Bank alleges that on July 25, 2002, Bay Estates Limited Liability Limited Partnership ("Bay Estates"), through its General Partner, executed and delivered to the Bank a promissory note for $802,500.00 ("Note"). (*Id.* at ¶ 7). As security for the Note, Bay Estates also executed and delivered to the Bank a Mortgage encumbering property described in the Warranty Deed as:

> Plot 7 Estate Mt. Pleasant, East End Quarter "A", St. Croix, U.S. Virgin Islands, containing approximately 1.842 U.S. acres, as more fully shown and described on O.L.G. Drawing No. 3134 dated June 15, 1973.

("the Property"). (*Id.* at ¶ 8; Dkt. No. 1-2 at 7).

Bay Estates' performance under the Note and Mortgage was also guaranteed by Arthur I. Appleton Jr. and Gregory F. Griffin. (Dkt. No. 26 at ¶ 9). On March 1, 2010, Acacia Properties assumed Bay Estates' obligation for repayment of the Note by Assumption Agreement, which released the original Borrower and Guarantors from their obligations under the loan documents. *Id.* at ¶ 10).

The Amended Complaint further alleges that on or about December 1, 2016 Acacia Properties defaulted under the terms and conditions of the Note and Mortgage by failing to make the monthly payments of principal, interest, and other charges. *Id.* at ¶¶ 12, 13. By correspondence

dated March 16, 2017, the Bank gave notice of default to Acacia Properties advising that failure to cure the default would result in acceleration of the debt and foreclosure of the mortgage. *Id*. at ¶ 14; Dkt. No. 1-5. Following Acacia Properties' failure to cure, the Bank elected to accelerate the loan, and the entire principal with accrued interest and other charges became immediately due and payable, which the Bank calculated, as of August 10, 2017 to be $641,010.69. (Dkt. No. 26 at ¶ 23).

In its Amended Complaint, the Bank asks that the Court enter judgment in its favor and against Acacia Properties in the amount of $641,010.69, plus interest, costs, expenses, and attorneys fees, and declare that: 1) Acacia Properties has defaulted under the terms of the Note and Guaranty thereby entitling the Bank to exercise all remedies provided by those documents; 2) the Bank's Mortgage forecloses the interest of all other lienholders; 3) the Property shall be sold with any proceeds to be applied to the sums due to the Bank; and 4) the Bank can recover a judgment against Acacia Properties for any deficiency resulting from the sale. *Id*. at 6.

On September 15, 2021, the Bank filed a "Motion for Summary Judgment and Judgment By Default" together with a Memorandum of Law, Affidavit of Proof and supporting exhibits (Dkt. Nos. 50, 50-1, 50-2, 51). In the Affidavit of Proof signed by Christiana C. Williams, Community President of the Bank of St. Croix, Williams attests that Acacia Properties defaulted under the terms and conditions of the Note, Assumption Agreement and Mortgage by failing to pay the monthly installments that became due pursuant to the Note and Mortgage. (Dkt. No. 50-1 at ¶¶ 8, 9). In addition, the Affidavit sets forth the amounts due and owing through August 26, 2021: an unpaid principal balance of $610,255.46, together with accrued interest thereon in the amount of $233,560.64; forced place insurance costs of $96,898.55; property preservation expenses for yard maintenance and safeguarding the property in the amount of $48,285.00; and

appraisal fees of $2,500, for a total amount due of $991,499.65. *Id.* at ¶ 12. Williams asserts that pursuant to the Note, interest accrues on the outstanding debt at the per diem rate of $121.2151 as of August 26, 2021. *Id.*[1]

The Bank argues that the procedural elements for default judgment against Acacia Properties and the Bensons have been satisfied because Acacia Properties and the Bensons: have not defended themselves in this matter; are not infants or incompetent persons; and are not engaged in military service. (Dkt. No. 51 at ¶¶ 25, 32). To date, neither Acacia Properties nor the Bensons have responded to the Bank's Motion.

With regard to summary judgment, the Bank asserts that its lien is senior and superior to those of the IRS and the Benson Trust. *Id*. at ¶¶ 10-13. The Bank represents that the Benson Trust recorded a lien on May 31, 2007, while the IRS recorded its lien on March 8, 2017. *Id*. at 3. Because the Bank's lien was recorded prior to those dates—on July 25, 2002—the Bank argues that its lien is senior and superior under Virgin Islands law. *Id*. On October 14, 2018, the Bank and the IRS filed a Stipulation stating that the Bank's "right, title, and interest" to the Property is "senior and superior" to that of the IRS. (Dkt. No. 14). Accordingly, the Bank argues that it is entitled to summary judgment against the IRS.

## II. APPLICABLE LEGAL PRINCIPLES

### A. Default Judgment

When considering a motion for default judgment, the Court accepts as true any facts contained in the pleadings regarding liability. Fed. R. Civ. P. 8(b)(6). Legal conclusions, however, are not deemed admitted, nor is the extent or amount of damages claimed by a party. *See Star*

---

[1] Pursuant to the terms of the Note, the interest rate upon default is 4.0% plus the Wall Street Journal Prime Rate, which adjusts from time to time. (Dkt. No. 1-2 at 13).

*Pacific Corp. v. Star Atl. Corp.*, 574 F. App'x 225, 231 (3d Cir. 2014); *Service Employees Int'l Union Local 32BJ v. ShamrockClean, Inc.*, 325 F. Supp. 3d 631, 635 (E.D. Pa. 2018); Fed. R. Civ. P. 8(b)(6). Parties are not entitled to an entry of default judgment as of right; instead, the matter is addressed to the sound discretion of the court. *Pieczenik v. Comm'r New Jersey Dept. of Envir. Protection*, 715 F. App'x 205, 208-09 (3d Cir. 2017); *Catanzaro v. Fischer*, 570 F. App'x 162, 165 (3d Cir. 2014).

An application for entry of default judgment must contain evidence, by affidavits and/or documents, of the following:

> (1) the entry of default pursuant to Rule 55(a); (2) the absence of any appearance by any party to be defaulted; (3) that the defendant is neither an infant nor an incompetent [person]; (4) that the defendant has been validly served with all pleadings; (5) the amount of [the] judgment and how it was calculated; (6) and an affidavit of non-military service in compliance with the [Servicemember's] Civil Relief Act.

*Bank of Nova Scotia v. Tutein*, Civil Action No. 2017-0016, 2019 WL 2656128, at *3 (D.V.I. June 27, 2019); *see also* Fed. R. Civ. P. 55(b); *Ditech Financial LLC v. Felice*, Civil Action No. 2016-94, 2018 WL 1771558, at *2 (D.V.I. Apr. 12, 2018). Additionally, the Court must assess three factors when determining whether a default judgment is appropriate: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to [defendant's] culpable conduct." *J&J Sports Productions, Inc. v. Ramsey*, 757 F. App'x 93, 95 n.1 (3d Cir. 2018) (citing *Chamberlain v. Giampapa*, 210 F.3d at 164).

    **B.**    **Summary Judgment**

To prevail on a motion for summary judgment, a movant must show that there is "no genuine dispute as to any material fact," and that, based on the undisputed facts, it is "entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Stone v. Troy Construction, LLC*, 935 F.3d 141, 147 n.6 (3d Cir. 2019); *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In reviewing a summary judgment motion, the district court is required to view all facts "in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor." *Curto v. A Country Place Condominium Ass'n., Inc.*, 921 F.3d 405, 409 (3d Cir. 2019) (citations omitted). The role of the court is to "determine whether there is a genuine issue for trial." *Stiegel v. Peters Twp.*, 600 F. App'x. 60, 63 (3d Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (internal quotation marks omitted)). A genuine issue of material fact exists when the fact-finder, viewing the record evidence, could rationally find in favor of the non-moving party. See *Pearson v. Prison Health Service*, 850 F.3d 526, 534 (3d Cir. 2017).

Pursuant to Rule 56(e), a non-moving party is required to establish facts which show the existence of a genuine issue for trial. This does not mean, however, "that a moving party is automatically entitled to summary judgment if the opposing party does not respond." Rather, "[i]f the adverse party does not [] respond, summary judgment, *if appropriate*, shall be entered against the adverse party." *Anchorage Associates v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990) (internal quotations and citations omitted).

### III. DISCUSSION

To succeed in a debt and foreclosure action, the plaintiff must prove three elements: (1) the debtor executed a promissory note and mortgage; (2) the debtor is in default under the terms of the note and mortgage; and (3) the lender is authorized to foreclose on the property mortgaged as security for the note. *See Brouillard v. DLJ Mortg. Capital, Inc.*, 63 V.I. 788, 793 (2015); *see also Thompson v. Fla. Wood Treaters, Inc.*, 52 V.I. 986, 995 (D.V.I. Dec. 6, 2009) ("To establish a prima facie case for recovery under a promissory note, the holder must demonstrate execution of

the note and a default in payment pursuant to its terms."); *Anthony v. FirstBank Virgin Islands*, 58 V.I. 224, 229 (V.I. 2013); 55 AM. JUR. 2D Mortgages § 604 (2019) (foreclosure requires a valid mortgage, default on part of mortgagor, and foreclosure in compliance with terms of contract).

### A. Default Judgment against Acacia Properties and The Bensons

The factual allegations of the Complaint and the Motion for Default Judgment, as supported by the accompanying documents, set forth all the necessary elements to entitle the Bank to judgment against Acacia Properties and the Bensons. The Bank has provided evidence to support the elements of its foreclosure action against Acacia Properties. The Bank has shown that (1) Bay Estates, through its General Partner, executed the Loan and Mortgage dated July 25, 2002 (Dkt. No. 1-2 at 12-30); (2) Acacia Properties, LP assumed Bay Estates' obligations (Dkt. No. 1-3); (3) Acacia Properties is in default under the terms of the Note and Mortgage (Dkt. No. 1-5 at 1-2); and (4) the Bank has possession of the Note and is the holder of the Mortgage, allowing it to maintain the foreclosure action and the Mortgage provides that the Bank is entitled to foreclose its lien on the Property (Dkt. No. 1-2 at 24). Accepting the factual allegations as true, in light of the accompanying documentation confirming the terms of the Note and Mortgage, the Court finds that the Bank has established, for purposes of default judgment, the merits of its claim.

In addition to establishing the elements of its claim, the Bank has satisfied all of the requirements necessary to obtain a default judgment against Acacia Properties and the Bensons. It has properly shown that: (1) default was entered against Acacia Properties and the Bensons by the Clerk of Court (Dkt. Nos. 10, 41); (2) Acacia Properties and the Bensons have not appeared in this action; (3) the Bensons are neither infants nor incompetent persons (Dkt. No. 51 at ¶¶ 25, 32); and

(4) Acacia Properties and the Bensons were validly served with process (Dkt. Nos. 8, 33, 38).[2] Further, the Bank has provided copies of Military Status Reports from the Department of Defense Manpower Data Center establishing that Eric B. Benson and Bradley P. Benson are not in the military service as defined in the Servicemember's Civil Relief Act, 50 U.S.C. § 3931 [formerly 50 App. U.S.C. § 526(a)] (Dkt. No. 39-1).[3]

In addition, Christiana Williams, Community President of the Bank, has averred in the Affidavit of Proof that Acacia Properties is in default of its obligations under the terms of the Note, Assumption Agreement and Mortgage. (Dkt. No. 50-1). The Bank must also show with specificity how it calculated the amount of the judgment. (Dkt. Nos. 104-1 at 5-7; 104-16). In reviewing the Affidavit of Proof, along with supporting exhibits, the Court concludes, based on information from publicly reliable sources, that there is an error in the accrued interest rate calculations, submitted by the Bank, which increases the accumulated accrued interest through August 26, 2021 from $233,560.64 claimed by the Bank to $235,410.08. This error arises because the Bank's beginning and end dates of the Wall Street Journal ("WSJ") Prime Rate is one day ahead, and one day behind respectively. For example, while the WSJ Prime Rate changes on June 15, 2017 to 4.25% from

---

[2] After unsuccessful attempts to serve Acacia Properties personally, the Magistrate Judge issued an Order authorizing service by publication. (Dkt. No. 7). Following Acacia Properties' failure to appear in this matter, the Bank filed a Motion for Entry of Default and the Clerk entered default against the entity on July 12, 2018. (Dkt. Nos. 9, 10). Thereafter, the Bank effectuated service on Eric B. Benson on August 13, 2019 (Dkt. No. 33). After unsuccessful attempts to serve Bradley P. Benson personally, the Magistrate Judge granted the Bank's Motion for Service by Publication. (Dkt. No. 35). On June 22, 2020, the Clerk entered default against the Bensons after they both failed to appear. (Dkt. No. 41).

[3] Because Acacia Properties is an entity, the default judgment requirements for individual defendants—that they not be infants or incompetent persons, or in the active military service—are not relevant here. *See United States v. Arawak Program, Inc.*, *et al*., Civil Action No. 2015-0027, 2016 WL 6123247, at *2 n.1 (D.V.I. Sept. 23, 2016).

4.00%, the Bank begins the new interest rate on the following day of June 16, 2017. In addition, other changes in the Wall Street Journal Prime Rate occurred on March 17, 2022, May 5, 2022, June 16, 2022, July 28, 2022, September 22, 2022, November 3, 2022, and December 15, 2022—after the Affidavit was filed—which impacts the current accruing per diem interest rate. As a result, the Court's calculations of the indebtedness vary from that presented by the Bank. The Court's corrected calculations are reflected in the chart shown below.

| January 1, 2017 – August 26, 2021 | | | | | | |
|---|---|---|---|---|---|---|
| **Begin Date** | **End Date** | **No. of Days** | **WSJ Prime Rate** | **Loan Interest Rate** | **Per Diem Interest Rate** | **Interest Accrued** |
| 01/01/2017 | 03/15/2017 | 74 | 3.75% | 7.75% | $ 129.57 | $ 9,588.18 |
| 3/16/2017 | 6/14/2017 | 91 | 4.00% | 8.00% | $ 133.75 | $ 12,171.25 |
| 6/15/2017 | 12/13/2017 | 182 | 4.25% | 8.25% | $ 137.93 | $ 25,103.26 |
| 12/14/2017 | 3/21/2018 | 98 | 4.50% | 8.50% | $ 142.11 | $ 13,926.78 |
| 3/22/2018 | 6/13/2018 | 84 | 4.75% | 8.75% | $ 146.29 | $ 12,288.36 |
| 6/14/2018 | 9/26/2018 | 105 | 5.00% | 9.00% | $ 150.47 | $ 15,799.35 |
| 9/27/2018 | 12/19/2018 | 84 | 5.25% | 9.25% | $ 154.65 | $ 12,990.60 |
| 12/20/2018 | 7/31/2019 | 224 | 5.50% | 9.50% | $ 158.83 | $ 35,577.92 |
| 8/1/2019 | 9/18/2019 | 49 | 5.25% | 9.25% | $ 154.65 | $ 7,577.85 |
| 9/19/2019 | 10/30/2019 | 42 | 5.00% | 9.00% | $ 150.47 | $ 6,319.74 |
| 10/31/2019 | 3/3/2020 | 125 | 4.75% | 8.75% | $ 146.29 | $ 18,286.25 |
| 3/4/2020 | 3/15/2020 | 12 | 4.25% | 8.25% | $ 137.93 | $ 1,655.16 |
| 3/16/2020 | 08/26/2021 | 529 | 3.25% | 7.25% | $ 121.22 | $ 64,125.38 |
| August 27, 2021 – December 27, 2022 | | | | | | |
| **Begin Date** | **End Date** | **No. of Days** | **WSJ Prime Rate** | **Loan Interest Rate** | **Per Diem Interest Rate** | **Interest Accrued** |
| 08/27/2021 | 03/16/2022 | 202 | 3.25% | 7.25% | $ 121.22 | $ 24,486.44 |
| 03/17/2022 | 05/04/2022 | 49 | 3.50% | 7.50% | $ 125.39 | $ 6,144.11 |
| 5/5/2022 | 6/15/2022 | 42 | 4.00% | 8.00% | $ 133.75 | $ 5,617.50 |
| 06/16/2022 | 07/27/2022 | 42 | 4.75% | 8.75% | $ 146.29 | $ 6,144.18 |
| 07/28/2022 | 09/21/2022 | 56 | 5.50% | 9.50% | $ 158.83 | $ 8,894.48 |
| 09/22/2022 | 11/02/2022 | 42 | 6.25% | 10.25% | $ 171.37 | $ 7,197.54 |
| 11/03/2022 | 12/14/2022 | 42 | 7.00% | 11.00% | $ 183.91 | $ 7,724.22 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 12/15/2022 | 12/27/2022 | 13 | 7.50% | 11.50% | $192.27 | $ 2,499.51 |
| **TOTALS:** | | **2,187** | | | | **$304,118.06** |

Finally, the Court has considered the *Chamberlain* factors and finds that the prejudice to the Bank resulting from Acacia Properties' breach of its contractual obligations, together with the apparent absence of a litigable defense, weighs in favor of the Court granting default judgment. In addition, Defendants Acacia Properties' and the Bensons' defaults were a result of their culpable conduct as evidenced by their refusal to respond to either the Complaint or the Amended Complaint. *See World Ent'mt Inc. v. Brown*, 487 F. App'x 758, 762 (3d Cir. 2012) (finding that defendant engaged in culpable conduct by, *inter alia*, failing to respond to complaint because such failure showed a willful disregard for plaintiff's legal communications); *Cohen v. Gabriel Enters., Inc., et. al.*, Civil Action No. 2011-0059, 2013 WL 1154847, at *5 (D.V.I. Mar. 21, 2013) (citing cases finding culpable conduct where defendants failed to answer complaint).

In view of the foregoing, the Bank has established that default judgment is appropriate against Defendants Acacia Properties and the Bensons.

### B. Summary Judgment Against the IRS

The Bank also argues that it is entitled to summary judgment against the IRS asserting that its mortgage has priority to that of any lienholder. (Dkt. No. 51 at ¶¶ 12-16).

"When determining the priority of liens, the Virgin Islands is a race notice jurisdiction." *Kennedy Funding, Inc. v. Oracle Bus. Devs., LLC*, Civil Action No. 2012-0009, 2016 WL 447843, at *7 (D.V.I. Feb. 4, 2016). Thus, an earlier recorded instrument takes priority over a later filed instrument. *See Moco Inves., Inc. v. United States*, 362 F. App'x 305, 309 (3d Cir. 2010). Based on the record, the Bank's Mortgage was recorded on July 25, 2002, while the liens of the Benson

Trust and the IRS were recorded on May 31, 2007 and March 8, 2017, respectively.[4] (Dkt. Nos. 1-5 at 3-5; 14). Because the Bank's lien was recorded prior to those of the Benson Trust and the IRS, the Bank has a first priority lien over the Property. Further, because the IRS' lien is subsequent to those of the Bank and the Benson Trust, the Court finds that the IRS has a third priority lien over the Property.

Accordingly, the Bank is entitled to summary judgment against the IRS as to the priorities of the liens against the Property.

## IV.   CONCLUSION

The Bank has satisfied the requirements necessary for an entry of default judgment against Defendants Acacia Properties and the Bensons as Co-Trustees of the Benson Trust. Accordingly, the Court will award the Bank judgment against Acacia Properties for the principal of $610,255.46; accrued interest of $235,410.08 from January 1, 2017 to August 26, 2021; interest from August 27, 2021 until the date of entry of this Judgment in the amount of $68,707.98; forced place insurance costs of $96,898.55; property preservation expenses for property and maintenance fees in the amount of $48,285.00; and appraisal fees of $2,500, for a total amount due of $1,062,057.07.

The Court will also grant summary judgment in favor of the Bank and against the IRS, finding that the Bank's mortgage lien on the Property is a first priority lien and the IRS' lien on the Property is a third priority lien.

An appropriate Judgment and Order accompanies this Memorandum Opinion.

Date: December 27, 2022                              _____/s/_____
                                                     WILMA A. LEWIS
                                                     District Judge

---

[4] As noted earlier, on October 4, 2018, the Bank and the IRS filed a Stipulation stating that the Bank's "right, title, and interest" is "senior and superior" to that of the IRS. (Dkt. No. 14).